Next case. Case No. 15-2513, People v. Geron Green. Thank you, Good morning, Your Honors. Good morning. Brian, oh I'm sorry. Would both the attorneys step up first and we'll let you both identify yourselves for the record. Sorry about that. Brian Levitt, L-E-V-I-T-T, on behalf of Appellant Geron Green. Good morning, Your Honors. Assistant States Attorney Mary Hudson-Gill on behalf of People. All right. Mr. Levitt, have you argued here before? Not here, no. Oh, well, welcome aboard. It's nice to see you. It's boring, so you've got a case. Thank you, and it is an absolute privilege to be here. Well, that's nice of you to say. So I suspect the reason our argument was granted was so that we could talk more about this comment from the trial judge, defining reasonable doubt. And as I'm sure this Court... Let me stop you for a moment. You relied on the Federal District Court case, Adorno v. Melvin. I certainly found it persuasive, yes. Pardon? I certainly found it persuasive, yes. Are you aware that that was reversed by the Seventh Circuit? I am, and I found out probably about 30 minutes before the State's Attorney contacted me and let us know that they were going to file the motion to cite that case, and there's plenty I have to say about it to be sure. You know, and the Seventh Circuit took your arguments and basically destroyed them, didn't they? I would disrespectfully disagree with that conclusion. I think they may... So they did reverse? They did reverse. They reversed a federal habeas petition. Now, we're here, of course, on direct appeal, and they, insofar as they touched on the state law question, they only did so under, of course, a very deferential, the federal habeas standard. Not to give you a real hard time, but didn't you also cite an unpublished decision in your brief? I did, yes. And we know, you know, that's not allowed. I understand. I, as we said in the brief, you know, I think it's obviously something, its relevance is very clear, but in any event, that's why we set aside those arguments, again, independent of that position. More than anything, I didn't want to take credit for Judge Starb's Yes. And it wasn't just Adorno. It was also Johnson and Pledge. There's been a number of cases. Some, Johnson was not an unpublished opinion. Pledge was. No, that was the published opinion. Right. So I want to take up first the state law question. And, of course, the state law analysis is there was no objection at trial. We don't contest that. It's whether or not, so the question is whether there was error, and if so, did it amount to plain error? In Illinois, of course, trial courts are prohibited from attempting to define reasonable doubt for the jury. Simply put, I would submit that these comments were error. And the first aspect of these comments I want to touch on is how do we describe these comments? How do we characterize them? I know this Court has, on previous occasion, referred to them as comments as opposed to bona fide instructions. I would submit that these were, in fact, instructions, and respectfully, here's why. First But didn't the judge specific? Well, go ahead. You explain why you believe it was an instruction. These were statements of law coming from the Court itself, and as statements of law given to a jury from a trial court, they're stamped with the imprimatur and authority of the Court and all that entails. And the subject matter was not some ancillary matter or just offhand chatter or welcoming the jury or anything along those lines. The subject matter was one of the most, if not the most important concept we have in our system of criminal jurisprudence, and that is the state's burden of proof. I specifically want to highlight on the record on page double C8, right before giving his definition of reasonable doubt, the trial judge stated, ladies and gentlemen, what I'm going to do right now is tell you about some basic principles of law that apply to all criminal cases. So what the judge is saying there, right before defining reasonable doubt, is he's telling the jury about basic principles of law that they have to apply. If these weren't instructions because they weren't final or complete, then I think along the same lines, we couldn't call limiting instructions that we're giving during the course of trial instructions. Let me ask you about this. Now, what he said was, these are not your final or complete instructions. Those will come after you've heard all the evidence and the final arguments of the attorneys. When the time for giving instructions come, I will read them to you and then you will get them in writing. So isn't he basically backing off any suggestion that what he's kind of going through with them preliminarily, that it's not really the law that they will be instructed upon later? I respectfully don't think so. I don't know how else, again, you read his comment that I'm instructing you of principles of law, basic principles of law, as, you know, whether we want to characterize that as. But he says they're going to be in writing and I'm going to give them to you later. And there was no discussion, there was no definition about reasonable doubt later, was there? No. Except that that's the burden of proof is upon the people. Burden of proof is beyond a reasonable doubt. Then they go through the issues and on each issue, if you find that the state has established each issue beyond a reasonable doubt, you should find the defendant guilty. If, on the other hand, and I think it's actually the opposite way, if you find that the state has not proved the issues beyond a reasonable doubt, it is your duty to find him not guilty. Right. So I think, yes, with the instructions at the end of trial, there was, they were almost, anything related to reasonable doubt was just from the pattern instructions. That is certainly the case. But given this comment at the beginning of the trial and the way, in effect, the way the jury would have received those and interpreted those instructions, I think that's something that the court needs to consider. But in any event, if, as case law, it's very clear that jurors are presumed to follow their instructions, even if this wasn't an instruction, I think we can all agree that juries are presumed to follow the fundamental principles of law given to them by the trial court, even if not a formal instruction. Do you think they remember the preliminary comments? Whether they do or not, I don't know, but my assumption is. One of the reasons they have written instructions is so that they can definitely have an accurate statement of the law after the evidence is in and before the deliberations begin. Right. And, you know, juries, of course, there's a lot thrown at them during the course of any trial. I don't know if that's something they will remember or not. But for our purposes in analyzing the appeal in the record, I think we have to presume that they did, in fact, take what the judge said to heart. All right. Well, then let's talk about what he actually did when he explained the burden of proof. So he said, well, I'm going to ask you a question. Okay. He said he compared preponderance of the evidence with reasonable doubt. But he didn't define reasonable doubt. He simply said, after he said what preponderance was, and he used that scale thing again, of course, which he didn't do in this case with the reasonable doubt. But he did in one of his other cases. Did he ask? Well, not necessarily. Maybe. The answer is maybe. We don't really know because he did this. He made some sort of gesture in Adorno. Right. As the Seventh Circuit noted, we don't know. The record was never developed in terms of what that gesture was or wasn't, if it helped his analysis, if it made it less prejudicial or more prejudicial. We just don't know. All right. So here he said, some of you may have sat on civil juries. There the burden of proof is preponderance of the evidence. Now, he's, you know, shooting this away and saying there, okay, the burden is by his preponderance. And if you look at a scale, all you have to do is tilt it. Now, that was a completely accurate statement of the law, was it not? I disagree. Okay. Well, all right. You don't think that when he was describing preponderance, he got it wrong? I think his problem with describing preponderance of the evidence was using the phrase, quote, the event occurred. And I think that bears to, he said it's more likely whether or not the event occurred, something to that effect. Oh, I see. After that, he said, I didn't take that into account. And the definition is it's more likely than not that the event occurred. That's preponderance of the evidence. Well, so preponderance of the evidence, too, is that the plaintiff sustained his claim, as to each element of the claim, more likely than not. All right. Well, forgetting about whether he erred in describing preponderance, he then said, in a criminal case, again, proof beyond a reasonable doubt is the highest burden of proof at law. So did he not at least try to distinguish the two? He did. I agree. And I still, despite the Seventh Circuit opinion in Adorno, what your comments are going to, I think, is the federal due process issue. And on that respect, I still don't think he adequately distinguished preponderance from reasonable doubt. No, we're looking at whether it's error. And under the state law claim, I think that's stepping back from all this. Even just the mere fact that he defined reasonable doubt before the jury is enough to say there's error. Well, how did he define it? He defined it through comparison to the civil standard to preponderance. He didn't define reasonable doubt other than to say that it's not preponderance. Would you agree? And to use the scale analogy. Yeah, but he didn't use the scale with the reasonable doubt. He did that once before. And he was told that that's not something he should do. Right. Well, he did use the words to describe the scale analogy. He didn't apparently gesture here. But he still told them about how it's like a scale, all you have to do is tilt it, maybe with his hands behind his back. But he didn't refer to any tilting or scale with reasonable doubt. He just said it's the highest burden of proof. Well, in comparison to preponderance. Counsel, these were 431B admonishments, right? I mean, the idea here is to make sure before we go any further with any individualized voir dire, that every juror knows, understands, and accepts that the standard is reasonable doubt. Right? That's what this was, right? Perhaps. Perhaps. Isn't that what he was doing here? I don't think so. I think what he was doing was something that just is completely foreclosed under Illinois law, that he's prohibited from doing. Well, he has to do 431B admonishments, right? Okay. And he was looking at these potential jurors and thinking some of you may have been in a civil case before, and I want to make sure you understand this isn't a civil case. We've got a higher standard here. So civil is this, but now we have reasonable doubt, which is, what did he say, the highest burden of proof. Where's the error? The error is incorrect about what he said. In terms of state law, the error is that any attempt to define reasonable doubt How is he defining reasonable doubt? By, through comparison to the civil, through preponderance of the evidence. And he is also using a scale analogy in doing so. What case says what Illinois state case, interpreting Illinois law, says that a court errs when it compares a preponderance of the evidence versus reasonable doubt? It doesn't, I don't think there's a case that specifically says that specific definition is error, but there are a number of cases, and not to mention the Supreme Court rule prohibiting trial courts from defining reasonable doubt. The question usually you see in case law is whether or not comments related to the burden of proof from the trial court amount to a definition. Well, what do you think the jury took as the definition? Exactly what he said. I think that it's something higher than preponderance of the evidence, but how much higher we don't know. But that's also true, right? Not higher than preponderance, but we don't know. Right, but not, there's certainly some gap, you know, people sometimes quantifying percentages. I don't know, everyone has different numbers. Tell me, what should he have said? He should have said nothing. Nothing. And then you would have appealed it and said, here, the judge didn't even say anything as to the difference of the burden of proof between a civil and a criminal case. That would be your appeal then? No, I don't think this is an issue that we would raise if he had said nothing, since there would be no issue if he just gave the pattern instructions concerning the elements, the nature of defense, the state's burden of proof. I'll point out, going back to your question, Judge Ellis, one of the real problems with comparing it to the civil standard is the civil standard is concerned with the quantum of evidence, as we highlighted in our brief, as opposed to the qualitative nature, the degree of certainty that a given party has. And in that sense, by comparing it through the use of a scale analogy and talking about tilting, scale can be completely vertical, as everyone, there's the common phrase, defense counsel can serve the table and play cards during trial and still get a not guilty, because they don't have to present any evidence. The defendant doesn't have to testify. So in that sense, that's one of the specific aspects or reasons why this analogy, I think, is flawed. But in any event, no matter how flawed it is or how prejudicial it is, it's something I think that bears more on the federal due process claim. I submit that the state law question is whether or not there is error, is purely whether or not he attempted to define reasonable doubt. I certainly think that's the case. You only have one case to support your argument. There's a number of cases, actually. No, I don't think you have one case to support your argument. Show me one case, just one, that says what you're telling us today. Not specifically with respect to... Because it doesn't exist that way. Well, with respect... It's like taking a pencil and calling it an elephant. That's what you want to do with it. And I will just note, for what it's worth, too, when I actually listened to the oral argument last night in a doorknob in front of the Seventh Circuit, and the first thing that the Attorney General's mouth in that case was to concede that, quote, as a matter of state law, Judge Bauer, the trial court's instruction was error. And Judge Bauer shortly thereafter used a colorful phrase to describe how the trial court made a mess, essentially. Made a what? The phrase was, he referred to the trial judge as having stepped in it, is what Judge Bauer said. Well, what were the facts in that case? They're slightly different, aren't they? They're slightly different, and I think, actually, the instruction here is more prejudicial and problematic in terms of... In that case, the judge kept repeating what preponderance of the evidence was. Here, it was only done once. I think one of the things the trial court did in Adorno that didn't happen here was to instruct the jury specifically at the beginning of the trial when he first said it that Illinois does not define reasonable doubt. That's something he said explicitly in Adorno and also in Johnson, but was not said here. I think... What did he actually say in Adorno? You tell me. I want to be refreshed. Sure. There is a... I know it's a footnote. The instruction in Adorno was, quote, then the other thing is the state has the burden of proof, and that burden of proof is proof beyond a reasonable doubt, and that lasts throughout each and every stage of the trial. Does anybody have any qualms about the state has the burden of proof or the proof beyond a reasonable doubt? Raise your hand either in the inner or the outer part of the courtroom. In brackets, nobody raised their hand. The judge continued, Illinois does not define reasonable doubt, but any of you who have sat on a civil jury, there's a preponderance of the evidence. Reasonable doubt is the highest burden of proof in our country and in our state. Those of you who may have sat on a civil case, preponderance of the evidence. If you look at this like a scale, all you have to do is tilt it. So the definition of preponderance of the evidence is it's more likely than not that the event occurred. And, again, Illinois does not define reasonable doubt. That's up for you to decide in words, but in analogy to the scale thing, you have to tip it like this so that would be some insight into what proof beyond a reasonable doubt. Okay, so there is a real big difference between that case and this case. Do you agree? There are some differences. Well, that last comment that he made, he was using that scale, wasn't he? Correct. And that is definitely not something that I would agree with you on a judge should never do as far as reasonable doubt goes. I think that's a big distinction. Again, I mean, the use of it, I don't know how the jury would have interpreted his comments here about tilting. Well, in that case, the Seventh Circuit said that that was an error. The Seventh Circuit said that was an error under the Department of Juvenile Habeas Review. It was given to the federal claim. State law, again, it was just if reasonable doubt is defined, that's error. Since it wasn't objected to a trial, we then have to look at whether or not this constituted a claim. Are you trying to say that it's different in the state court than it is in the federal court concerning that? Absolutely. What case supports that? In Illinois. Yeah. Show me a case that says that. In Illinois, there's the Supreme Court. I just asked you a question. Is there a case that says that? Yes. What's the name of the case? To quote from People v. Spate, 153 L. 2nd, 365, quote, the law in Illinois is clear that neither the court nor counsel should attempt to define reasonable doubt standards for the jury. People v. Cagle, 41 L. 2nd, 528, this court has repeatedly held that the legal concept of reasonable doubt needs no definition and that where an error-involved instruction on the concept is given, it may be deemed prejudicial error. And I'll just add to People v. Malmonado, 14 L. 2nd, 52 at Pennsite 60, quote. None of those cases did the same thing occur. Right. But it's a very, I mean, it would be a rare situation where a trial judge made exactly the same comment. There's an analogy between those cases. I think your position is kind of that you believe that when judges start trying to compare the preponderance standard with reasonable doubt, that that is error. Would you say that? Yes. I think what you want us to say, if we were to accept your position, is that any time a trial judge tries to define reasonable doubt by making a comparison to preponderance, that that is improper. It shouldn't occur. And that the court should avoid that. Correct. But I don't even think you have to get to the preponderance comparison. It's just the first few phrases, the first few words you mentioned. If a trial judge attempts to define reasonable doubt, that's all you need in a jury to find error. Okay, so now you're really asking us to go even further. Right. You want us to say that a judge should never say anything other than the burden of proof upon the people of the State of Illinois is proof beyond reasonable doubt. Pretty much. That's a pretty fine line and pretty extreme. What would you say? Well, I think the Supreme Court has of course said, and I think the Supreme Court of Illinois has also echoed, that reasonable doubt is a self-defining term. There's a good reason why that Supreme Court rule exists telling trial judges not to define it. In any event, this court itself has looked critically in virtually every other case where the judge has made similar comments, if not explicitly finding error, saying at least things along the lines of, they don't condone these comments or similar comments, they don't approve it, and then going on to addressing the plain error analysis and saying, well, in any event, this wasn't plain error. And for the reasons I mentioned in discussing the sufficiency of the evidence, I think this is probably the rare case where there's actually a bona fide sufficiency challenge. There was the prior statements of Darian Broomfield that he did not admit to, and there was someone who saw a car kind of looking like one that belonged to the defendant, leaving the scene five to ten minutes later, although he couldn't tell you the make, model, or color exactly. I thought he said it was like a Bonneville. Bonneville-type car. How many Bonneville-type cars are there? Only one I can remember. Who knows. Well, have you ever heard of anything other than a Bonneville? I mean, is there, other than the Pontiac Bonneville that they don't make anymore, is there any other kind of Bonneville that you're aware of? You're asking the wrong question, but I just don't know all that much about cars, but I do know the color is something that looks interesting. I'll tell you that that's kind of a specific description. Sure. Just to say it's a Bonneville, I mean, it does have a meaning to a lot of people who are familiar with cars. So you have a witness saying he was in a Bonneville-type car. And then he admitted on the bus to. . . And then they produced ownership records that the defendant owned a Bonneville. Right. So that, I mean, at best, that testimony puts Mr. Green near the scene of the shooting. You know, on the sufficiency challenge, I would ask the court to look very carefully at People v. Smith. It's a case we cited. It's 182. . . Was that a recantation case? No, it's the one where the Illinois Supreme Court had said, yes, a single identification is sufficient to sustain a conviction, but only if the identification is, I think, positive and reliable were the words they used. And they actually, the eyewitness there, they just looked at the fact that there were some inconsistencies of a shooting outside a bar in terms of the number of people. I think she said maybe two people were outside at the time, and another witness, like the bartender, said one, something to that effect. But she positively said this defendant was the shooter, and it was just her testimony was inconsistent with other people's. This isn't really, though, a single witness case, is it? It is. It absolutely is. Why? You have a car. You've got a witness. You've got other witnesses describing what actually happened. That's called corroboration. So it's not really a single witness case. Well, so in Smith there were actually at least two other eyewitnesses who put the defendant in the very bar where the shooting happened to corroborate that eyewitness to the shooting itself. This is the case the Supreme Court of Illinois still said this evidence was insufficient. And why did they? Because in order for a single identification, think of the actual shooting. What did they find lacking? The credibility of the identification. Yeah, and why? Do you recall? Because there were inconsistencies between that witness and other witnesses who testified at trial. And one of the things I actually note, and which I think is pretty remarkable, is that she was impeached with a statement that she had given to a defense investigator five months before trial contradicting her version, as the state put it on. Here, Darian Broomfield, the state's eyewitness, also gave a signed affidavit to defense counsel five months before trial. That did not even have to be, he did not even have to be impeached with that here because he didn't testify consistent with what the state wanted to. He, on the stand, said, I never saw Jerron Green shoot Bruce Lee. Every prior statement I made to that effect was the result of police harassment. I was coerced and kind of forced him to do it. He did not admit to ever voluntarily identifying Mr. Green and actually just signing a piece of paper on one occasion because they asked me to. They told me I was going to lose my job if I didn't. And so that's the state's case. And one more point in Smith, too. Well, isn't that really something the jury decides and then we as a reviewing court have to determine whether or not any rational trial fact that found the elements of the offense beyond reasonable doubt? Correct. And I submit when you look at those facts, even in the light most favorable to the state, they're not sufficient. And even if I'm wrong about that and this court disagrees, we're having such an involved discussion about the sufficiency of the evidence. What does that say in terms of the closely balanced analysis? We're letting you. I'm sorry. We're letting you. Well, I am taking full advantage. But in any event, I think I'm standing up here with a pretty straight face making this argument about the sufficiency of the evidence. Yes. And that given, then at best, I think we can say the evidence was closely balanced here. And for what it's worth, I will just point out, too, in Adorno, actually, where the court said, well, we don't know if this was there. We didn't like it. But in any event, this wasn't played in. As an officer of the court, would you say that the evidence was closely balanced in this case? Absolutely. Well, I can only say it in so far. I mean, I think the evidence was absolutely insufficient here. I think this conviction should be outright reversed. So at best, I. And you think that maybe he would win the second time? I think there are no shortage of members of the defense bar in this city who would want to try the case this week. Counsel for Mr. Green on appeal admittedly among them. I guess at this point I will just say. I didn't mention that we were certainly going to allow you some time for rebuttal. I ran out to get my glasses, and so I didn't make my normal 15 minutes aside. But if you have anything further now, you may comment. But you will also have time to respond in rebuttal. Thank you. I will just ask if the court has any questions about our argument about the prosecutor's closing argument. Not at this time. Okay. If not, then I will say thank you and ask that the court vacate Mr. Green's conviction. If not, outright reverse it and save the rest of my time. Thanks again. Of course. Good morning again, Your Honors. May it please the Court. And would you state your name for the record? Mary, I don't know that anyone did that. Defendant forfeited the issue, the first issue, arguing that Judge Gant improperly defined reasonable doubt. And he cannot establish plain error. There was no error here. If you look at exactly what Judge Gant said, he first talked about preponderance of the evidence, and then he talked about reasonable doubt. He did not even bring the scale into the discussion about reasonable doubt, where courts have found that that wasn't a proper way to do it. In this case, the judge gave the fineer, the 431B instructions, presumed innocent. The state has to prove you beyond a reasonable doubt. Guilty. The defendant doesn't have to testify. The defendant doesn't have to present any evidence. Then the court went on and said, as we've all discussed already, in civil cases, it's preponderance of the evidence. It's balancing the scale, more likely than not. And then next he said, in a criminal case, again, is the highest burden of proof of law in the land. Is there any Illinois decision that says that a trial judge cannot describe preponderance of the evidence in a criminal case? Your Honor, I researched that, and I didn't find a case discussing that, actually discussing that. But what we have here is we also have an Illinois case, People v. Johnson, where this court found, in that case, that it wasn't here, where Judge Gunn, again, defined reasonable doubt. In that case, it was a little more murky. In that case, Judge Gunn said the state has the burden of proof beyond a reasonable doubt. In Illinois, we do not. It is not defined by the Supreme Court or by the state legislature. That's something for you to decide. But if any of you have been in a civil jury, if you use the analogy of a scale, all you have to do is tilt it, and that's proof beyond a reasonable doubt. Then he continued, in a criminal case, if you use the same scale, it's a balance like this. And then he indicated proof beyond a reasonable doubt is the highest burden in the land. And the court there found that that was an error, that was a plain error, because the judge told the jurors that reasonable doubt is the highest burden in the land. And this is what we have in this case. The judge did not conflate preponderance of the evidence or reasonable doubt. He said this is what preponderance of the evidence is, and this is beyond a reasonable doubt. There was no error in what Judge Gahn said when he told the jury about reasonable doubt. With regard to the sufficiency of the evidence, there is no doubt. This defendant was proven guilty beyond a reasonable doubt. We have the statement of Darian Broomfield. Darian Broomfield said three months after this incident occurred, when he was arrested on a narcotics violation, he said, I know something about this murder. And he told the police officer who interviewed him, I saw it. I was playing my dice game with a bunch of my friends. I saw the victim make a left-hand turn on Abra Street from Chicago. I saw the victim get out of the car. I saw the victim cross the street, go in the store five minutes later. I saw him exit, and then he saw the defendant. Somebody he has known almost all his life. I thought it was about five years. He said five years. Pardon me? I thought he said about four or five years. He said five or six years. Then he had known the defendant, and then he knew the victim about five years. They all live in the same neighborhood together. He knew this defendant. He saw the defendant run out of the alley. The defendant had a hoodie on. The defendant was ten feet away from him. But he knew the defendant. He saw him run up to Bruce Lee and fire five shots into him. And then Darian scared, so he runs away. And then later he sees the defendant running away, and then he sees the defendant in a different car. But Darian Broomfield, in his handwritten statement, he said all these things. He saw the defendant shoot and kill Bruce Lee. Now, defense counsel says, well, you need to have that corroborated. No, you don't. A single eyewitness testimony is sufficient to convict. A weekend of testimony is sufficient to convict. And that's what we have here. But we also have the corroboration. We have the corroboration of the delivery truck driver. All he's doing is delivering soda into the Edgar food store. He hears the shots. He's standing outside the car. He has to run into the cargo area because he's so scared. Then you have Mr. Bay. Mr. Bay is a private investigator. He hears the five shots, which also is what Mr. Patterson heard. He heard about five shots. Darian Broomfield saw at least five shots, or five shots. This is all corroboration. And then he saw the red Bonneville drive down very fast the wrong way down the street. You also have the video. Minutes before the shooting, you see the Bonneville on the videotape. Defendant owned a Bonneville. I mean, this is a case cut and dry. The judge did not improperly advise the jury the reasonable doubt, the under reasonable doubt standard. There's no evidence that the jury didn't find that they used a different standard when they found the defendant guilty. I'm sorry to backtrack. On the sufficiency of the evidence, how do you distinguish the Smith case that counsel so vehemently relies upon to say that this evidence was insufficient? Well, in your honor, I'm not completely. I've read the Smith case. I don't have it before me. But in this case, if you look at this case, this case, Mr. Broomfield, he picked the defendant out of a lineup. He picked him out of a photo rank. And he did a handwritten statement. And even though he recanted at trial, and even though we had this affidavit that was presented to the state five months before, the state didn't know whether Mr. Broomfield would testify until trial. Nobody knows. You have a witness, a reluctant witness. He knew the people involved. He's going to be reluctant. But he kept on saying the same thing until he got on the stand. And that's when he changed it. And the jury got to see Mr. Broomfield when he recanted. They got to see how he, his demeanor. They got to hear the tone of his voice. And after hearing all that and knowing about prior convictions and knowing that he was recanting, they still found the defendant guilty. Unless you have any other questions, we rely on our brief. And we would ask that you confirm the defendant's conviction for first degree murder. Counsel, you may respond. Just briefly, there were some comments during my initial argument about how the scale analogy was not used here. I just want to read from the record, double C-10, the actual quote, because he does reference the scale, as I thought. I think he does. I'll just read it. The next constitutional principle I want to talk to you about is the burden of proof. In a criminal case, the burden of proof is proof beyond a reasonable doubt. Some of you may have sat on civil juries where the burden of proof is preponderance of the evidence. And if you look at a scale, all you have to do is tilt it. And you continue. So I just want to point out for the Court that he does, in fact, reference the scale in this case. He does. But I think it's clear in this record. He's referencing the scale only to preponderance. Correct. But I think you want us to say, I mean, I know you want us to go even further. But I think you would like us to say that when a court uses a scale analogy with preponderance and at the same time is discussing reasonable doubt, that that is error. Is that fair? That's fair. Yeah. And I just want a couple other points. In Johnson, I think that was still this court said, quote, if not it was one of the other appellate courts, said, quote, that it does not condone the reference in comparison to the civil standard. So counsel had made comments about how it approved those comments. It certainly didn't. It may not have exactly found error. But, again, it was at the very least equivocal about very similar comments. One other point on the sufficiency of the evidence in relation to Smith that I think I didn't hit, that the State kind of mentioned about how Darian Bloomfield three months later in the brief they referred to him as coming forward and sort of made comments along those lines. Again, that's not what his testimony was. It was that to say he came forward would be a stretch. And that's important because in Smith the Illinois Supreme Court took special note of the fact that the eyewitness, after witnessing the shooting at a bar, walked back in and had a drink, didn't tell anybody, didn't come forward, essentially didn't make an outcry about the shooting. And Darian Bloomfield here not just didn't say anything that day, the next day or the day after. It took him three months. And it's in three months, again, in terms of whether or not he was consistent up until trial. He was consistent up until trial that he never identified Jerome Green as the shooter. It was just those pieces of paper as witnessed by the detectives reporting it. But he himself signed the affidavit five months prior. So that's an important point because it relates to the closing argument, the statements the prosecution made in closing argument about the first time he's no longer consistent is when he's face-to-face with his killer. They were aware from the record that he was not being consistent. That was evidenced by the opening statement as well. So I just wanted to clarify that. And I just want to clarify, too, one other point about the sufficiency challenge is I don't think there's any question there's sufficient evidence that Bruce Lee was killed and murdered. The question is who. It was identity. That's the question. And all the state had on that specific point was Darian Bloomfield's purported statements of identification as well as Villarube at least maybe putting a car similar to one Jerome Green had in the vicinity of the shooting. And it wasn't until also five to ten minutes after he said. So a couple blocks away from the shooting. It's not until as many as ten minutes later that there's a car leaving the scene, which would have been after police arrived, I think, too. It's certainly something that's probative of how much his statement corroborated Darian Bloomfield's prior statements. So if there's no other questions, I will again thank you all for using Mr. Green's conviction. All right. Very animated arguments today all around. And we will take the matter under advisement. The case was well argued, well briefed. And we're going to take a recess now to switch panels for our next case.